UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO YOUNG CHO,

                          Plaintiff,

          –against–

OSAKA ZEN SPA, BOKSIL PAULA LEE, *in her individual and official capacities*, JOSHIA LEE, *in his individual and official capacities*, JOSEPH LEE, *in his individual and official capacities*, NAN HI LEE, *in her individual and official capacities*, JOHN AND JANE DOES 1-10, *individually and in their official capacities*, and XYZ CORP. 1-10,

                          Defendants.

**OPINION AND ORDER**

19-cv-7935 (ER)

RAMOS, D.J.:

        So Young Cho brought claims under the Fair Labor Standards Act ("FLSA")[1] and New York Labor Law ("NYLL")[2] against Osaka Zen Spa ("Osaka" or the "Spa"), Boksil Paula Lee ("Paula"), Joshia Lee ("Joshia"), Joseph Lee ("Joseph"), and Nan Hi Lee ("Namhi")[3] for alleged violations of her labor rights arising from her employment at Osaka.  Cho also alleges that she was unlawfully discriminated and retaliated against on the bases of her disability, perceived disability, and religion in violation of New York State and City Human Rights Law.[4]  On May 10, 2023, the Court entered a default judgment against Namhi for failure to appear.  Doc. 83.

---

[1] 29 U.S.C. §§ 201 *et seq.*

[2] New York Labor Law §§ 190 *et seq.*

[3] Cho's submissions contains the incorrect spelling of defendant Nan Hi Lee's name.  The Court acknowledges that Namhi Lee is the correct spelling.  For the sake of clarity, this Opinion will use the correct spelling in all instances.

[4] New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"); N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

Before the Court is *pro se* defendant Namhi's motion for vacatur of default judgment. For the reasons discussed below, the motion is GRANTED.

## I.    BACKGROUND

### A. Factual Background

In November 2013, Cho began working for Osaka, a spa located at 37 West 46th Street, 3rd Floor, New York, New York (the "Building").  Doc. 50 ¶¶ 5–7.  According to Cho, all named defendants were employees and persons of authority who exercised control over Cho's employment.  *Id.* ¶¶ 9–12.  They each possessed "the power to hire and fire employees, to determine employees' salaries, to maintain employment records, to exercise control over [] Osaka's operations, and to exercise control over Osaka's employees, like [Cho]."  *Id.* ¶ 45.  John Moore ("Moore") was an employee of the Building, and Ms. Park[5] ("Park") and Gina Chin ("Chin") were managers of Osaka.[6]  *Id.* ¶¶ 41, 44; *see also* Doc. 88-5 at 3 (Letter from Moore signed as "Property Manager" to Namhi).

When Cho began working for Osaka, she worked at least twelve hours per day, five days per week, and received $3.33 per hour.  *Id.* ¶¶ 33–34.  Beginning November 2016, Cho received $5 per hour for the same number of hours.  *Id.* ¶ 35.  Starting September 2017, Cho received $5.83 per hour for the same number of hours.  *Id.* ¶ 36.  In April 2018, she began working sixty-eight hours per week—up from the prior sixty hours per week—and received $6.67 per hour.  *Id.* ¶ 37.

---

[5] Namhi identifies an employee named MyunJa Bak and notes in parenthesis that she is also known as "Mrs. Park." Doc. 88 at 1.  In the FAC, Cho identifies a Ms. Park as one of the managers of the Spa.  Doc. 50 ¶ 41.

[6] Namhi alleges that Moore was the self-appointed property manager of the Building and that Park was a self-appointed manager of Osaka.  Doc. 88 at 4.

Cho alleges that throughout her employment with Osaka, each of the defendants, including Namhi, discriminated against her and harassed her on the basis of a learning disability and a speech disability.  *Id.* ¶¶ 64–65.  According to Cho, the defendants, collectively, would refer to her as "retard" or "stupid" and would call her "slow" and tell her that she "has something wrong with her brain," in spite of Cho's complaints about this behavior.  *Id.* ¶¶ 66–69.  Cho also alleges that, beginning in September 2017, the defendants forced her to attend morning bible readings multiple times each week and when she would refuse to attend, the defendants would bully her and call her names.  *Id.* ¶¶ 72–74.  Cho alleges that Namhi told her on different occasions that she is "a sinner and that's why [her] mother is going to die."  *Id.* ¶ 75.

Namhi is a family physician who lived and ran her medical practice on the second floor of the Building from 2014 until July 2017, when she was evicted.  Doc. 88 at 1; Doc. 88-2 at 3 (Notice of Eviction).  Separately, Cho alleges that she was forced to clean Namhi's doctor's office and room  "without additional compensation" for this work.  Doc. 50 ¶ 84.  When Cho would complain or request pay for the additional work, Namhi would yell at her, saying "[b]ecause you work for our [B]uilding then you're our slave."  *Id.* ¶ 85.  Finally, Cho alleges that she was unlawfully terminated by Osaka on June 25, 2018.  *Id.* ¶ 32.

According to New York State records, Namhi was the chief executive officer (CEO) of Osaka.  Doc. 90-6 (Department of State Division of Corporations, Entity Information).  Co-defendants Paula and Joshia[7] are her parents, and co-defendant Joseph is her brother.  Doc. 88-3 at 13; Doc. 88 at 1.  In support of her motion to vacate the default judgment,[8] Namhi submitted a

---

[7] In her statement of facts Namhi states that "co-defendant… Joshua [sic] Lee" is one of her "elderly parents."  Doc. 88 at 4.

[8] Namhi also included an answer to the amended complaint and brought counterclaims against Cho in this submission.  Doc. 88.

February 13, 2018 report from a doctor indicating she suffers from depression and anxiety.  Doc. 88-1 at 1.  The report also notes that she declined medication for her depression and anxiety and declined to see a mental health professional that day because "she want[ed] to choose her own mental health counselor."  *Id.* at 2.

According to Namhi, her depression came about, in part, as a consequence of Cho's aiding and abetting of Park and Moore's actions.  Specifically, she alleges that Cho "colluded" with fellow employees Park and Moore to aggressively harass, intimidate, assault, and make false allegations in order to financially defraud her and her incapacitated mother Paula of over three million dollars.  Doc. 88 at 2.  Additionally, she alleges that Cho aided and abetted Park and Moore in their efforts to evict her.  Doc. 88-5 at 3 (July 12, 2016 Letter from Moore to Namhi ask her to vacate the second floor of the Building); *see also* Doc. 88-2 at 3 (Notice of Eviction).  On February 13, 2018 she reported to her doctor that she was a "depressed and anxious" due to the efforts of Moore to have her evicted, and also "convinced her parents to sign [Paula's] will to give him their estate."  Doc. 88-1 at 2.  Lastly, Namhi alleges that Cho made false allegations against her in New York Family Court which led to the order of protection that was entered against her, in which Namhi was ordered to stay away from her mother except for incidental contact in the common areas of the Building, and to "stay away from the 3rd and 6th floors."  Doc. 88-3 at 2 (September 2, 2016 Temporary Order of Protection).

During this period, Namhi also alleges that Moore was acting as a guardian for her elderly mother, Paula.  *See* Transcript dated September 14, 2016 from the Appointment of a Guardian proceedings for Paula (Attorney Kim stating "Moore is doing a good job as building manager, but at this point he's doing a lot more than that.  He's acting in the capacity almost as a de facto limited guardian of sorts.").  Doc. 88-8 at 3–4.

Namhi claims that due to the mental and emotional trauma she has endured from the eviction and the temporary order of protection, she has "not been able to regain her mental and physical stamina[.]"  Doc. 88 at 5–6, ¶¶ 10–11.  She does not state whether she has continued to practice medicine since these events occurred, but states that she has an "inability" to re-establish her career and financial stability as a result from the mental and emotional trauma incurred by Cho's aiding and abetting Park and Moore.  *Id.*

### B. Procedural Background

Cho filed her complaint on August 23, 2019, alleging that the defendants deprived her of her lawfully earned wages and benefits in violation of the FLSA and the NYLL.  Doc. 1.  Cho also alleged unlawful discrimination and retaliation directed at her on the bases of her disability, perceived disability, and religion in violation of NYSHRL and NYCHRL.  *Id.*  On August 27, 2019, summonses were issued as to all defendants.  Doc. 5.  On October 9, 2019, the Court referred the case to mediation, which ultimately did not result in a settlement.  Doc. 7.

All defendants, including Namhi, were served on September 4, 2019.  Doc. 18.  On October 11, 2019, Osaka, Joshia, Joseph, and Paula filed an answer.  Doc. 9.  Namhi never answered.  After counsel for Osaka, Joshia, Joseph, and Paula withdrew, Doc. 11, and defendants failed to retain new counsel by March 31, 2020, Cho requested leave to file a motion for default judgment against all defendants.  Doc. 13.  The request was granted, Doc. 14, and on June 5, 2020, the Clerk of Court issued a certificate of default as to all named defendants.  Doc. 21.

At the Order to Show Cause hearing held telephonically on July 22, 2020, counsel for defendants Osaka, Paula, Joshia, Joseph appeared and the Court denied Cho's proposed default judgment as moot.  Doc. 29.  However, the Court did grant Cho leave to submit a proposed default judgment as to Namhi.  *Id.*  Cho did not do so at the time.

Discovery proceeded according to the case management plan that was signed on October 26, 2020.  Doc. 35.  On November 23, 2020, Joshia and Joseph moved to dismiss Cho's claims against them.  Doc. 38.  The Court granted the motion on May 3, 2021, and dismissed all claims against Joshia and Joseph.  Doc. 46.  On May 27, 2021, Cho filed an amended complaint (the "FAC"), again naming Joshia and Joseph as defendants.  Doc. 50.  During a case management conference held on December 1, 2021, the Court stayed the case pending the appointment of a guardian for Paula, who had been diagnosed with progressive Alzheimer's.  Doc. 88-2 at 2 (February 18, 2017 Letter from Myung Hi-Lee).[9]  The parties were directed to report back to the Court by March 1, 2021 with an update.  On March 1, 2021, counsel for defendants informed the Court that a guardian had not yet been appointed due to a legal battle between Paula's children over her custody.  Doc. 57.  The letter also indicated that a protective order was entered "against one of [Paula's] children."  *Id.*; *see also* Doc. 88-3 at 2–3.

On March 9, 2022, the parties submitted a joint status report, and Cho sought leave to move for default judgement as to Osaka, Paula, Joshia, and Joseph for failure to answer the FAC. Doc. 59.  On March 10, 2022, the Court lifted the stay in the matter, again granted Cho leave to pursue default against Namhi, and directed the Osaka and Paula to respond to the FAC.  Doc. 60. Again, Cho did not pursue default judgment against Namhi.

On November 9, 2022, Cho submitted a proposed default judgment as to Namhi in the amount of $2,269,624.21.  Doc. 68-1.  The Court directed Cho to provide support for this amount by November 16, 2022.  Doc. 70.  Cho timely did so.  Doc. 73.  The Court entered default judgement against Namhi on May 10, 2023 in the amount of $1,489,556.19.  Doc. 83.  Namhi, appearing *pro se* for the first time in this action, then appealed the judgment to the Second

---

[9] Myung Hi-Lee is Namhi's sister.

Circuit Court of Appeals on May 15, 2023.  Doc. 84.  On June 5, 2023, Namhi requested that the

Court correct her name from Nan Hi Lee to Namhi Lee.  Doc. 86.  On June 7, 2023, Namhi

wrote to the Court again, this time requesting an extension of time to file a motion to vacate the

default judgment, due to her ongoing treatment for a medical condition unrelated to her mental

health issues discussed above.  Doc. 87.  She also indicated that she planned to file a motion to

hold the appeal in abeyance in the Court of Appeals.  *Id.*  She filed the instant motion on July 15,

2023.  Doc. 88.  Cho opposed the request on July 21, 2023.  Doc. 90.  The Court informed the

parties that it would consider the motion to vacate the default following an indication that

Namhi's appeal had either been withdrawn or otherwise held in abeyance.  Doc. 91.  On July 28,

2023, the Court of Appeals ordered that Namhi's appellate motion to vacate the default judgment

be held in abeyance.  Doc. 92.

## II.    LEGAL STANDARD

"It is well established that the submissions of a *pro se* litigant must be construed liberally

and interpreted 'to raise the strongest arguments that they suggest.'"  *Triestman v. Federal*

*Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).  "Concerns regarding the

protection of a litigant's rights are heightened when the party held in default appears *pro se*."

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

"For good cause shown the court may set aside an entry of default and, if a judgment by

default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Fed. R. Civ.

P. 55(c).  According to Rule 60(b), a court may vacate a judgment for any of the following

reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Motions under Rule 60(b) appeal to the sound discretion of the district court. *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd sub nom.*, *Gollust v. Mendell*, 501 U.S. 115 (1991). The Second Circuit has suggested that "defaults are generally disfavored" and has expressed "a preference for resolving disputes on the merits." *Enron Oil Corp.*, 10 F.3d at 95–96 (2d Cir. 1993). Accordingly, on a motion to set aside a default judgment, doubts should be resolved in favor of the party seeking relief. *Id.* at 96. These factors are applied "more rigorously in the case of a default judgment," rather than in a challenge to the entry of a default, "because the concepts of finality and litigation repose are more deeply implicated in the [default judgment] action." *Id.*; *accord 1199SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, No. 22 Civ. 531 (LJL), 2022 WL 17251772, at *2 (S.D.N.Y. Nov. 28, 2022).

## III.   DISCUSSION
### A.  Good Cause

In determining whether there exists "good cause" to vacate a default judgment, courts consider: (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2nd Cir. 1994) (quotation marks and citations omitted). As a general limiting principle, "[t]he extreme sanction of a default judgment … should only be imposed upon a serious showing of willful default." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotations and citations omitted). The second factor, prejudice to the non-

defaulting party, has been described as "the single most persuasive reason" for denying motions to vacate default judgment. *Glob. Gold Mining, LLC v. Ayvazian,* 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), *aff'd in part, modified in part sub nom. Glob. Gold Min., LLC v. Ayvazian,* 612 F. App'x 11 (2d Cir. 2015) (quoting C. Wright, A. Miller and M. Kane § 2699 (3d ed. 2010)). The last factor, the existence of a meritorious defense, has been categorized as a "key factor" in the analysis. *New York v. Green,* 420 F.3d 99, 109 (2d Cir. 2005). However, though "the absence of such a defense is *sufficient* to support [a] district court's denial" of a Rule 60(b) motion, it is not necessary. *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 174 (2d Cir. 2004) (emphasis added).

The court may also consider "whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted). In general, "good cause" should be construed generously. *Id.* ("[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party."). It is the burden of the moving party to demonstrate that good cause exists for setting aside the default. *State Univ. N.Y. v. Triple O, LLC*, No. 21 Civ. 2116, 2022 WL 14177198, at *2 (2d Cir. Oct. 25, 2022) (citation omitted).

Namhi argues that the default judgment entered against her should be vacated due to her excusable neglect because she was "unable to properly assess the original complaint served in 2019… due to disabled mental state of trauma and depression." Doc. 88 at 1–2. Further, she argues that Cho's misspelling of her name on the complaint "confused" her and that she "misunderstood the court procedures and need to address the complaint despite the incorrect spelling" of her name. *Id.* at 2. Namhi claims that she "received only the initial complaint in September 2019 and then a Default Judgment on May 17, 2023, and was not given the amended

complaint or made aware of any of the court proceedings until May 17, 2023." *Id.*  Namhi also argues that she has a meritorious defense because she was not an Osaka employee and never employed Cho or ever had the authority to hire or fire Osaka employees. *Id.*  She does not make any arguments regarding prejudice to Cho.

Cho argues that Namhi was properly served and voluntarily chose to default without making any appearances for almost four years.  Doc. 90 ¶ 22.  Secondly, Cho argues that vacating the default judgment would prejudice her because it would set this case back four years. *Id.* ¶ 58.  Lastly, Namhi was Cho's employer and therefore has no meritorious defense to the FLSA claims brought against her. *Id.* ¶ 47.

### 1. *Willfulness*

In the context of default judgment, willfulness amounts to conduct that is "more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  In other words, willfulness is "egregious or deliberate conduct," such as where a defaulting defendant "apparently made a strategic decision to default." *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996).  Importantly, "[d]eliberately evasive conduct, even if not in 'bad faith,' amounts to 'more than mere negligence.'" *United States v. Manhattan Central Capital Corp.*, No. 94 Civ. 5573 (WK), 2001 WL 902573, at *5 (S.D.N.Y. Aug. 9, 2001) (quoting *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634–35 (2d Cir. 1998)). Namhi argues she did not participate in the case for two reasons:  her depression and confusion caused by a typographical error on the complaint.

"[I]f [defendant] was psychologically incapable of responding to court process—for whatever reason—then her failure to do so *may* be excusable." *BMG Music Pub. Ltd. v. Croma Music Co.*, No. 01 Civ. 1941 (CSH) (JCF), 2003 WL 22748794, at *1 (S.D.N.Y. Nov. 18, 2003)

(emphasis added).  However, a party is not entitled to vacate a default judgment entered against

… her where "her proffered excuse for not appearing is that illness prevented her from doing so,

is unsupported by any medical documentation."  *See Guerre v. Trustees of Columbia University*

*in the City of New York*, 300 A.D.2d 29, 750 N.Y.S.2d 612 (1st Dep't 2002) (denying plaintiff's

motion to vacate the judgment in favor of defendant after plaintiff failed to appear for an oral

argument and had no meritorious cause).  In *BMG Music,* defendant allowed important "mail to

accumulate unopened" due to a deep depression and therefore argued that she was not properly

served with the complaint.  *BMG Music Pub. Ltd. v. Croma Music Co*., No. 01 Civ. 1941 (CSH),

2003 WL 22383374, at *1 (S.D.N.Y. Oct. 16, 2003).  In contrast, Namhi acknowledges that she

was properly served and had actual knowledge of the action.  *See* Doc. 88 at 1.

Further, the sole medical record provided indicating that she suffers from depression and

anxiety is from February 13, 2018, and notes that she declined medication and seeing a mental

health professional.  Namhi does not provide any records suggesting she has since sought care

from a mental health professional or has begun treatment.  Nevertheless, under the Court's

discretion and in resolving doubts in favor of the party seeking relief—particularly, a *pro se*

party—the Court finds that Namhi's depression constitutes excusable negligence for not

appearing in the action.  *See BMG Music Pub. Ltd.* 2003 WL 22748794, at *1 ("[I]f [defendant]

was psychologically incapable of responding to court process—for whatever reason—then her

failure to do so may be excusable.").

As to Namhi's confusion regarding Cho's misspelling of her name on the complaint, the

Court finds that the mistake did not render service defective and that Cho's error carries no legal

significance.  *See Arista Records, Inc. v. Musemeci*, No. 03 Civ. 4465 (DGT) (RML), 2007 WL

3124545, at *3 n. 3 (E.D.N.Y. Sept. 18, 2007), *report and recommendation adopted*, 2007 WL

3145861 (E.D.N.Y. Oct. 25, 2007) (holding that misspelling of defendant's last name did not render service defective).

The Court finds that Namhi's failure to answer the complaint was not "egregious or deliberate conduct" rising to the level of willfulness.  *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005).  Accordingly, this factor counsels in favor of vacatur.

   *2. Prejudice to Cho*

Namhi does not address how vacating the default judgment entered against her will or will not prejudice Cho.  *See generally* Doc. 88.  Cho argues that allowing Namhi to vacate the default "will set this case back approximately 4 years."  Doc. 90 ¶ 58.

In considering whether a plaintiff would be prejudiced if a default judgment were vacated, the Court must take into account more than mere delay or passage of time.  *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Enron Oil Corp.*, 10 F.3d at 98.  A plaintiff may demonstrate prejudice by showing "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916.  Prejudice may also be present if vacatur would "thwart plaintiff's recovery or remedy."  *Green*, 420 F.3d at 110 (internal quotation marks and citation omitted). To meet this standard, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated."  M*urray Eng'g, P.C. v. Windermere Props. LLC*, No. 12 Civ. 52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).

    Cho does not allege that vacating the default would result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. Instead, Cho argues that the "almost 4 years of intentional delay by Namhi Lee to appear in this

case should not be overlooked." Doc. 90 ¶ 18. However, much of the delay is attributable to

Cho herself. This action was filed on August 23, 2019. Doc. 1. Namhi's deadline to respond to

the complaint was September 25, 2019. Doc. 8. Nonetheless, Cho did not request leave to file a

motion default judgment against Namhi until April 30, 2020, over seven months later. Doc. 13.

The Court granted leave for Cho to move for default judgment as to Namhi on July 22, 2020.

Yet, Cho did not do so before the Court stayed the case pending the appointment of a guardian

for Paula on December 1, 2021. The Court lifted the stay and *again* granted Cho leave to pursue

default against Namhi on March 10, 2022. Doc. 60. Yet it was not until November 9, 2022,

eight months later, that Cho moved for default judgment as to Namhi. Doc. 68-1. *See Gunnells*

*v. Teutul*, 469 F. Supp. 3d 100, 104–05 (S.D.N.Y. 2020) (vacating the default judgment against

the defendant in part because the five-month delay between filing of the FAC and the second

motion for default judgment was "entirely attributable to a plaintiff's inaction.").

Second, Cho has not argued how the delays that *are* attributable to Namhi will cause Cho

any prejudice. Indeed, Namhi appealed the default judgment merely five days after it was

entered, Doc. 84, and two months later filed the instant motion to vacate the default judgment

thus causing a delay of no more than two and a half months. Doc. 88. *See id.* ("[W]hile the

defaulting defendants caused a delay of three months between the filing of the default judgment

and their motion to vacate, plaintiff offers no explanation for how this delay will result in any

prejudice, particularly in light of plaintiff's own delays in litigating this case…").

Lastly, the fact that Cho waited, collectively, over two years to move for default

judgment after being granted leave to file to do so suggests that some further delay will not

unduly prejudice her. *Enron Oil Corp.*, 10 F.3d at 98 (holding that plaintiff waiting over a year

before seeking default judgment strongly suggests that some further delay will not cause prejudice).

Accordingly, the Court finds that there is no evidence that Cho will suffer prejudice if the default judgment is vacated, counseling strongly in favor of granting the motion.

### 3.  *Meritorious Defense*

To make a sufficient showing of a meritorious defense, a defendant need not prove the defense conclusively.  *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998).  A defendant must, however, present facts that if proven at trial, would constitute a complete defense.  *Enron Oil Corp.*, 10 F.3d at 98; *see also Green*, 420 F.3d at 109 (citing *McNulty*, 137 F.3d at 740). Accordingly, Namhi must "present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).

Namhi argues that she was never employed by Osaka or employed Cho and never had the authority to hire or fire Osaka employees, determine wages, work schedule or the day to day operations at Osaka.  Doc. 88 at 2.  Namhi provides evidence that can be construed as supporting her purported meritorious defense that she was never employed by Osaka.  First, she asserts that she "has always worked in a completely separate, unaffiliated, independent private medical practice in a different location…." *Id*; *see* Doc. 88-2 at 2 (Letter from Myung-Hi confirming Namhi has a lease for the second floor of the Building); Doc. 88-2 at 3 (eviction notice of Dr. Namhi Lee from the second floor of the Building); Doc. 88-3 at 12, 16–19 (Letters from Namhi's patients confirming she worked as a medical doctor); Doc. 88-3 at 13–14 (Letter from friend Carmen Martinez stating that she has "visited Dr. Lee's office in her family business and

building" and identifying Namhi's "home and work place on the 2nd floor of [the] family building.").

Secondly, that because of the temporary order of protection that was entered on September 2, 2016, Namhi could not enter the third floor of the building, which is where Osaka was located ("[R]espondent is to stay away from the 3rd and 6th floors."). Doc. 88-3 at 2; Doc. 50 ¶ 7. Because Namhi could not so much as be on the same floor as Osaka, she argues that any claim that she was "'an owner or acted in a supervisory capacity' physically impossible and completely implausible." Doc. 88 at 8.

Cho cites to *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) to argue that Namhi can be considered an employer at Osaka because she is listed as the CEO of Osaka. Doc. 90 ¶ 48. Cho also contends that the fact that Namhi was working in the Building at the time she was employed by Osaka weighs in favor of her being classified as an employer. *Id.* ¶ 53.

To determine where a defendant is an "employer," courts in the Second Circuit look to four factors to determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). "The overwhelming weight of authority is that a corporate officer with *operational control* of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)) (emphasis added).

In *Irizarry*, the court found that Catsimatidis, the chairman and CEO of a supermarket, was an employer under FLSA even though there was no evidence that he was responsible for FLSA violations or that he ever directly managed or otherwise interacted with plaintiffs. *Irizarry*, 722 F.3d at 116 (2d Cir. 2013).  The Court reasoned that because he was active in running stores, including contact with individual stores, employees, vendors, and customers, and he hired managerial employees and exercised overall financial control of the company, among other activities, he had functional control over the enterprise as a whole.  *Id.*  "Ownership, or a stake in a company, is insufficient."  *Id.* at 111.  Thus, Cho's reliance on *Irizarry v. Catsimatidis* is misplaced.

While Namhi argues that she "has always worked in a completely separate, unaffiliated, independent private medical practice in a different location since 1999," Doc. 88 at 2, elsewhere in her briefing she states that she worked on the second floor of the Building from 2014–2017. *See* Doc. 88 at 8 ("Namhi Lee … was operating at … 2nd Floor of 37 West 46th Street, New York, NY[] from 2014-2017.").  Whether Namhi worked in the same Building as the Spa during Cho's employment is of no moment.  Namhi worked on a completely different floor of the Building than the floor Osaka was operating from.  Further, Cho provides no caselaw indicating that working in an independent practice in the same building imputes employer status on an individual.

Accordingly, the Court finds that Namhi presents facts that if proven at trial, would constitute a complete defense.  *Enron Oil Corp.*, 10 F.3d at 98; *see also Green*, 420 F.3d at 109 (citing *McNulty*, 137 F.3d at 740).

Finally, in this case, the Court finds that entry of default would bring about a harsh and unfair result.  *Enron Oil Corp.*, 10 F.3d at 96.  Default judgment was entered against her in the

amount of $1,489,556.19.  Doc. 83.  Under these circumstances, "good cause" should be construed generously.  *Enron Oil Corp.*, 10 F.3d at 96.

Taking into consideration the lack of willfulness and prejudice, and Namhi's meritorious defense, as well as the Second Circuit's strong preference in favor of deciding cases on the merits, and noting that default judgment is an "extreme sanction ... of last, rather than first, resort," *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981), the Court finds that vacatur is warranted in this instance.

## IV.   CONCLUSION

For the foregoing reasons, the motion to vacate the default judgment is GRANTED.  The parties are directed to appear for a telephonic status conference on September 13, 2023 at 10:30 a.m.  The parties are instructed to dial 877-411-9748 and enter access code 3029857# when prompted.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 88.

It is SO ORDERED.

Dated:   August 4, 2023
         New York, New York

_____
                EDGARDO RAMOS, U.S.D.J.