UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO YOUNG CHO,

                      Plaintiff,

– against –

OSAKA ZEN SPA, BOKSIL PAULA LEE, *in her individual and official capacities*, JOSHIA LEE, *in his individual and official capacities*, JOSEPH LEE, *in his individual and official capacities*, NAN HI LEE, *in her individual and official capacities*, JOHN AND JANE DOES 1-10, *individually and in their official capacities,* and XYZ CORP. 1-10,

                      Defendants.

**OPINION & ORDER**

19-cv-7935 (ER)

RAMOS, D.J.:

    So Young Cho brought claims under the Fair Labor Standards Act ("FLSA")[1] and New York Labor Law ("NYLL")[2] against Osaka Zen Spa ("Osaka"), Boksil Paula Lee ("Paula"), Joshia Lee ("Joshia"), Joseph Lee ("Joseph"), and Nan Hi Lee ("Namhi")[3] for alleged violations of her labor rights arising from her employment at Osaka. Cho also alleges that she was unlawfully discriminated and retaliated against on the bases of her disability, perceived disability, and religion in violation of New York State and City Human Rights Laws.[4]

    There are two motions before the Court. First, Namhi moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 108. Second, Cho

---

[1] 29 U.S.C. § 201 *et seq.*

[2] New York Labor Law § 190 *et seq.*

[3] Cho's submissions contain the incorrect spelling of defendant Nan Hi Lee's name. The Court notes that Namhi Lee is the correct spelling. This Opinion will use the correct spelling in all instances.

[4] New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"); N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

moves for discovery sanctions pursuant to Federal Rule of Civil Procedure 37 to bar Namhi and Paula from testifying at trial or from providing affidavits.  Doc. 109.  For the reasons discussed below, Namhi's motion is GRANTED and Cho's motion is GRANTED in part and DENIED in part.

I.     BACKGROUND[5]

    A.  Factual Background

In November 2013, Cho began working for Osaka, a spa located at 37 West 46th Street New York, New York (the "Building").  ¶¶ 5–7.  According to Cho, all named defendants were employees and persons of authority who exercised control over her employment.  ¶¶ 9–12.  They each possessed "the power to hire and fire employees, to determine employees' salaries, to maintain employment records, to exercise control over [] Osaka's operations, and to exercise control over Osaka's employees, like [Cho]."  ¶ 45.

When Cho began working for Osaka, she worked at least twelve hours per day, five days per week, and received $3.33 per hour.  ¶¶ 33–34.  Beginning November 2016, Cho received $5 per hour for the same number of hours.  ¶ 35.  Starting September 2017, Cho received $5.83 per hour for the same number of hours.  ¶ 36.  In April 2018, she began working sixty-eight hours per week—up from the prior sixty hours per week—and received $6.67 per hour.  ¶ 37.

During her time working at Osaka, Cho alleges that she had multiple "bosses," including Namhi, and that she had to follow their orders "no matter what they asked her to do."  ¶ 50.  Upon information and belief, Cho alleges Osaka was operating under Joshia and Namhi's acupuncture licenses, as well as Joseph, Joshia, and Namhi's massage licenses.  ¶ 52.

Namhi is a family physician who lived and worked on the second floor of the Building from 2014 until July 2017, when she was evicted.  Doc. 88 at 1, 8; Doc. 88-2 at

---

[5] Unless otherwise noted, citations to "¶ _" refer to the First Amended Complaint, Doc. 50.

2–3 (Notice of Eviction). She was listed as the chief executive officer (CEO) of Osaka. Doc. 90-6 (Department of State Division of Corporations, Entity Information). Co-defendants Paula and Joshia are her parents, and co-defendant Joseph is her brother. Doc. 88-3 at 13; Doc. 88 at 1.

Cho alleges that throughout her employment, each of the defendants, including Namhi, discriminated against her and harassed her on the basis of a learning disability and a speech disability. According to Cho, the each of the defendants would refer to her as "retard" or "stupid" and would call her "slow," in spite of her complaints about this behavior. ¶¶ 64–71.

Cho also alleges that, beginning in September 2017, the defendants forced her to attend morning bible readings multiple times each week and when she would refuse to attend, the defendants would bully her and call her names. ¶¶ 72–78. Cho alleges that Namhi told her on different occasions that she is "a sinner and that's why [her] mother is going to die." ¶ 75. She also alleges that Namhi "forcibly dr[ew] a cross on her forehead once every two months." ¶ 77.

Separately, Cho alleges that she was forced—although she does not allege by whom—to clean Namhi's doctor's office and room "without additional compensation" for this work. ¶ 84. When Cho would complain or request fair pay for the additional work, Namhi would yell at her, saying "[b]ecause you work for our building then you're our slave." ¶ 85. Finally, Cho alleges that she was unlawfully terminated by Osaka on June 25, 2018. ¶ 5.

**B. Procedural Background**

The Court assumes familiarity with the procedural background of this case, which is described in detail in the Court's previous Opinion and Orders. *See* Doc. 46 (May 3, 2021 Opinion and Order granting Joseph and Joshia's motion for judgment on the pleadings); Doc. 93 (August 4, 2023 Opinion and Order granting Namhi's motion to vacate the default judgment against her).

Cho filed her complaint on August 23, 2019, alleging that the defendants deprived her of her lawfully earned wages and benefits in violation of the FLSA and the NYLL. Doc. 1. Cho also alleged unlawful discrimination and retaliation on the bases of her disability, perceived disability, and religion in violation of NYSHRL and NYCHRL. *Id*.

All defendants, including Namhi, were served on September 4, 2019. Doc. 18. On October 11, 2019, Osaka, Joshia, Joseph, and Paula filed an answer. Doc. 9. Namhi did not answer at that time. After counsel for Osaka, Joshia, Joseph, and Paula withdrew, Doc. 11, and defendants failed to retain new counsel by March 31, 2020, Cho requested leave to file a motion for default judgment against all defendants. Doc. 13. The request was granted, Doc. 14, and on June 5, 2020, the Clerk of Court issued a certificate of default as to all named defendants. Doc. 21.

At the Order to Show Cause hearing held telephonically on July 22, 2020, counsel for defendants Osaka, Paula, Joshia, and Joseph appeared and the Court denied Cho's proposed default judgment as moot. Doc. 29. However, the Court did grant Cho leave to submit a proposed default judgment as to Namhi. *Id*. Cho did not do so at that time.

Discovery proceeded according to the case management plan that was signed on October 26, 2020. Doc. 35. During a case management conference held over a year later on December 1, 2021, the Court stayed the case pending the appointment of a guardian for Paula, who had been diagnosed with progressive Alzheimer's. Doc. 88-2 at 2 (February 18, 2017 Letter from Myung Hi-Lee).[6] The parties were directed to report back to the Court by March 1, 2022 with an update. On March 1, 2022 counsel for defendants informed the Court that a guardian had not yet been appointed due to a legal battle between Paula's children over her custody. Doc. 57.

On March 9, 2022, the parties submitted a joint status report, and Cho again requested leave to file default judgment against all defendants. Doc. 59. On March 10,

---

[6] Myung Hi-Lee is Namhi's sister and Paula's daughter.

2022, the Court lifted the stay and, as relevant here, granted Cho leave to pursue default judgment against Namhi. Doc. 60. Eight months later, on November 9, 2022, Cho submitted a proposed default judgment as to Namhi. Doc. 68-1.

On January 10, 2023, Cho filed a letter motion to compel Paula to appear for a deposition. Doc. 74. On January 13, 2023, the Court directed the parties to arrange for Paula's remote deposition. Doc. 77.

On May 10, 2023, the Court entered default judgment against Namhi. Doc. 83. Namhi, appearing *pro se* and for the first time in this action, then appealed the default judgment to the Second Circuit Court of Appeals on May 15, 2023. Doc. 84. On July 15, 2023, Namhi moved to vacate the default judgment against her. Doc. 88. Namhi ultimately withdrew her appeal, and on August 4, 2023, the Court granted Namhi's motion to vacate the default judgment. Doc. 93.

On October 19, 2023, counsel for Paula advised the Court that Paula had not been deposed, as discussed in more detail below. Doc. 96. On December 1, 2023, Namhi answered the First Amended Complaint. Doc. 100. On December 7, 2023, counsel for Cho filed a letter advising the Court of his difficulties in scheduling Namhi's deposition due to her limited availability, as also discussed in more detail below. Doc. 104.

Namhi then filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeking to dismiss all claims with prejudice. Doc. 108. Her motion is dated December 18, 2023, and was docketed onto the Electronic Case Filing system on December 19, 2023.[7] *See* Doc. 108; Dec. 19, 2023 Minute Entry. On December 20, 2023, Cho moved for discovery sanctions pursuant to Federal Rule of Civil

---

[7] As counsel for Cho notes, the Court set a schedule directing Namhi to file her motion by December 18, 2023. Nov. 9, 2023 Minute Entry.

Procedure 37, specifically asking to bar Paula and Namhi from testifying at trial or from providing affidavits. Doc. 109.[8] Both motions were fully briefed by January 19, 2024.[9]

Namhi filed an amended reply in support of her motion for judgment on the pleadings on January 26, 2024. Doc. 126. In her letter to the Court filed on the same day, Namhi explained that she intended on attaching exhibits to the reply filed on January 19, 2024, but was unsuccessful because the file containing the exhibits was "too large to upload" to the Court's electronic system, "as per the Pro Se office." Doc. 125.

### C. Dispute on Scheduling Depositions

Cho's motion concerns a dispute between the parties about scheduling Paula and Namhi's depositions. Paula was originally served a notice of deposition on July 21, 2021, which stated that her deposition would begin on "a date mutually agreed upon by counsel." Doc. 110-4. However, from that time, the parties have been unable to schedule her deposition.

On October 17, 2023, counsel for Paula informed the Court that Paula had been hospitalized in Korea due to a fall, and that as a result, her deposition had not been scheduled. Doc. 95. On October 19, 2023, counsel again wrote to the Court to advise that Paula was able to understand some of counsel's questions, but that her nurse "insisted" that Paula was not in physical or mental condition to sit through a deposition. Doc. 96. The letter noted that counsel for defendants preferred not to schedule Paula's deposition "in the near future." *Id.* During a telephonic conference held on November 9, 2023, the Court directed Paula's counsel to submit documentation of her medical

---

[8] Cho had originally filed a letter motion to compel Namhi to appear at a deposition on December 11, 2023. Doc. 105. Four days later, on December 15, 2023, Cho filed a letter requesting leave to file a motion to bar Namhi and Paula from providing testimony at trial or from providing affidavits. Doc. 106. The Court granted Cho leave to file her motion on December 19, 2023. Doc. 107. Accordingly, the Court considers the motion to compel withdrawn.

[9] Cho included a declaration with her opposition to the motion for judgment on the pleadings. Doc. 116. She also attached six exhibits. Docs. 115-1 to 115-6. Namhi also submitted a declaration with her reply in support of her motion for judgment on the pleadings. Doc. 124. In the amended reply filed on January 26, 2024, Namhi attached nine exhibits. Docs. 125-1 to 125-9.

6

condition. On December 15, 2023, counsel for Paula informed the Court that he did not have any medical records demonstrating her "medical condition or [her] cognitive ability." Doc. 106.

Separately, counsel for Cho has been attempting to schedule Namhi's deposition. On September 15, 2023, counsel for Cho sent a notice of deposition to Namhi, through email, which also stated that her deposition would be held on a mutually agreed upon date. Docs. 110-3, 110-4. On the same day, Namhi emailed back stating that "I am not sure when I will be able to answer your request bye [sic]" and that she does "not wish to meet in person as I [am] actively coughing and COVID is quite active[.]" Doc. 110-6. Counsel for Cho informed her he was seeking dates for her availability in November. *Id*. Namhi emailed again, explaining that she was diagnosed with ovarian cancer and that she would like to proceed with her deposition via Zoom "to avoid unnecessary risks of COVID." Doc. 110-9 at 30.

Counsel for Cho emailed Namhi and counsel for Paula on October 3, 2023, informing them that he was still waiting for Namhi and Paula's availability for November 2023 depositions. Doc. 110-7. Receiving no response, counsel for Cho followed up again via email on October 10, 2023. *Id*. Namhi responded the same date, asking whether it could wait till December "before the 16th?" Doc. 110-8.

Namhi and counsel for Cho continued to email about scheduling her deposition through November. Doc. 110-9. Namhi agreed to be deposed, via Zoom, on November 27, 2023, subject to confirming with her doctors. Doc. 110-9. However, on November 20, 2023, Namhi emailed counsel for Cho stating that "I have more testing ordered by the oncologists today and have follow ups for planning treatment asap, so I will have to postpone my deposition." Doc. 104. Counsel for Cho responded that same day, asking for a timeline of her medical tests and for corroborating medical records, to which Namhi replied that she "will not attend [the] deposition this Monday . . . until further notice from the Judge." *Id*.

7

On December 1, 2023, Namhi submitted a letter to the Court requesting additional time to complete her deposition, citing her health issues. Doc. 101. She wrote again on December 6, 2023, elaborating on her medical tests, informing the Court she did not attend the November 27, 2023 deposition, and noting that she would "wait another opportunity to be deposed." Doc. 103.

On December 11, Namhi deposed Cho, asking her questions for "approximately 1.5 hours." Doc. 110 at 6. Discovery in the case closed on December 15, 2023. *See* Doc. 110 at 10. On December 20, 2023, Namhi submitted a letter to the Court stating that to the extent the "Court deems necessary, upon its decision of my motion . . . please allow me to be deposed by [Cho's] counsel, as he has informed me several times that he cannot depose me after 12/15/23 until approved by the Court." Doc. 112.

## II. LEGAL STANDARDS

### 1. *Motion for Judgment on the Pleadings*

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[10] Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

To survive a motion to dismiss, the pleadings must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible," dismissal is appropriate. *Id.* In applying these standards, a court accepts as true all factual allegations in the pleadings and draw all reasonable inferences in the non-moving party's favor. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). However, the court "give[s] no effect to assertions of

---

[10] Namhi notes that she answered on December 1, 2023, and multiple defendants have yet to be deposed. Doc. 108 at 6. *See* Doc. 108 at 6.

8

law or to legal conclusions couched as factual allegations." *Id.* (internal quotation marks and alterations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

When deciding a motion for judgment on the pleadings, a court may only consider "the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 507 (2d Cir. 2009) (citing *Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998)).

 *2. Motion for Discovery Sanctions to Bar Testimony and Affidavits*

District courts have "wide discretion in sanctioning a party for discovery abuses." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir.1999); *see also S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir.2010) ("we review all aspects of a District Court's decision to impose sanctions for abuse of discretion"). Rule 37(d) authorizes sanctions when "a party, or a party's officer, director or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d). Rule 37(d)(3) also provides that available sanctions are set forth in Rule 37(b)(2).

Rule 37(b)(2) states that "if a party . . . fails to obey an order to provide or permit discovery," the court may impose various sanctions, including issuing an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" Fed. R. Civ. P. 37(b)(2)(A)(ii).

### III. DISCUSSION

#### A. Motion for Judgment on the Pleadings

*1. The Court Will Not Consider Matters Outside of the Pleadings.*

Both Namhi and Cho have submitted exhibits and declarations in support of their positions on the motion for judgment on the pleadings. *See* Doc. 116 (Cho Declaration dated January 5, 2023); Doc. 124 (Namhi Declaration dated January 19, 2023); Docs. 115-1 to 115-6 (Cho exhibits); Docs. 125-1 to 125-9 (Namhi exhibits). However, courts do not generally consider matters outside the pleadings in deciding motions for judgment on the pleadings pursuant to Rule 12(c). *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (internal citations omitted). When a party presents matters outside the pleadings, "a district court [in resolving a Rule 12(c) motion] must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal citations and quotations omitted). Ultimately, it is within the district court's discretion to decide whether to exclude the extraneous material. *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 450–51 (E.D.N.Y. 2007) (internal citations omitted).

Cho and Namhi do not provide any documents that existed when the First Amended Complaint was filed in 2021. *See* Docs. 115-2 to 115-6; Docs. 125-1 to 125-9.[11] Likewise, their declarations are dated from 2023. *See* Docs. 124, 125. Because Cho does not rely on or incorporate these exhibits or declarations in the First Amended Complaint, they therefore fall outside the pleadings. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Additionally, the parties are still contesting discovery issues regarding Namhi and Paula's depositions. *See Sussman v. I.C. Syst., Inc.*, 928 F. Supp. 2d

---

[11] The Court excludes Doc. 115-1, which is a copy of the First Amended Complaint. The Court can technically consider this document since it is a copy of a pleading, but this distinction makes no practical difference to the case.

784, 787 n.1 (S.D.N.Y. 2013) (declining to convert motion to one for summary judgment because "[t]here would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered"). Accordingly, the Court will not consider the exhibits and declarations submitted by the parties in deciding the motion for judgment on the pleadings, and it declines to convert Namhi's motion into one for summary judgment.

2. *Timeliness of the Motion*

As a preliminary matter, Cho argues that Namhi's motion should be rejected because it was untimely filed one day late. Doc. 114 at 14–15. While the Court granted Namhi leave to file the motion by December 18, 2023, the electronic docket reflects that it was filed on December 19, 2023. *See* Doc. 108

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

Namhi's motion is dated December 18, 2023, *see* Doc. 108, and was electronically docketed one day later. Due to the leniency afforded *pro se* litigants, other courts in this District have accepted late *pro se* briefing. *See Muhammad v. Saul*, No. 19-cv-07638 (SDA), 2020 WL 508901, at *2 (S.D.N.Y. Jan. 31, 2020) (accepting *pro se* opposition brief filed three days after the deadline); *Dins v. Bank of Am., N.A.*, No. 16-cv-5741 (KBF), 2017 WL 570944, at *1 (S.D.N.Y. Feb. 13, 2017) ("Given Dins's *pro se* status, the Court will consider the late filing."). Nor does Cho identify any prejudice she

11

suffered as a result of a one-day delay. Accordingly, while technically untimely, the Court will accept Namhi's motion.

### 3. *FLSA and NYLL*

The parties dispute whether Namhi was Cho's employer at Osaka. Namhi argues that the First Amended Complaint fails to plead allegations sufficient to show that she operated as Cho's employer. Doc. 108 at 8–11. Cho counters that an employment relationship did exist because Namhi was directly involved in the spa's management and operations and supervised employees, including Cho. Doc. 114 at 19–22.[12]

"For liability to attach under the FLSA or the NYLL, a defendant must be an 'employer.'" *Ruixuan Cui v. E. Palace One, Inc.*, No. 17-cv-6713 (PGG), 2019 WL 4573226, at *6 (S.D.N.Y. Sept. 20, 2019) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Although the FLSA does not define the term "employer" in the first instance, it provides that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see Guerra v. Trece Corp.*, No. 18-cv-625 (ER), 2020 WL 7028955, at *8 (S.D.N.Y. Nov. 30, 2020).

The NYLL uses a nearly identical definition of the term "employer," and "District courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA." *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-cv-5735 (GHW), 2017 WL 2600051, at *3 (S.D.N.Y. June 15, 2017) (quoting *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013)). Thus, courts in this District have applied the same tests to determine whether an individual constitutes

---

[12] Both parties also reference the fact that Namhi was listed as Osaka's CEO on the New York Division of Corporations website. *See* Doc. 108 at 3–4; Doc. 114 at 13. However, the fact that Namhi was the CEO is not alleged in the complaint or incorporated by reference, and is only supported by separate subsequently-filed exhibits. *See, e.g.*, Doc. 90-6 (Department of State Division of Corporations, Entity Information). Accordingly, the Namhi's status as CEO is a fact outside of the pleadings and is not included in the Court's analysis.

an employer under the FLSA and the NYLL. *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014).

The Second Circuit has adopted an "economic reality" test to assess whether a defendant is an employer under the FLSA. *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). This test considers whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* Although these factors may be sufficient to establish employment status, they are not necessary to do so. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003).

In *Zheng*, the Second Circuit considered a somewhat overlapping set of factors designed to illuminate whether "an entity has functional control over workers even in the absence of the formal control measured by the *Carter* factors."[13] *Id.* at 72 (emphasis added). Five years later in *Barfield v. N.Y.C. Health and Hospital. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008), the Second Circuit noted that there is "no rigid rule for the identification of an FLSA employer" as it considered the variety of formal and functional factors set forth in *Carter* and in *Zheng*, respectively, in an effort to "give proper effect to the broad language of the FLSA." The Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

Cho alleges that Namhi had "the power to hire and fire employees, to determine employees' salaries, to maintain employment records, to exercise control over the [*sic*] Osaka's operations, and to exercise control over Osaka's employees, like [Cho]." ¶ 50.

---

[13] Among the relevant factors considered in *Zheng* are whether the defendants' premises and equipment were used for the plaintiffs' work, the degree to which the defendants supervised the plaintiffs' work, and whether the plaintiffs worked exclusively or predominantly for the defendants. *Zheng*, 355 F.3d at 72.

13

Cho also alleges that she "was a person of authority who exercised control over [Cho's employment." ¶12. These allegations track nearly verbatim with the factors set forth in *Carter*'s formal economic reality test. *See Carter*, 735 F.2d at 12. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 585 (S.D.N.Y. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Peng Bai v. Fu Xing Zhou*, No. 13-cv-05790 (ILG) (SMG), 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) ("[Plaintiff's] allegations that [defendant] had the power to hire, fire, set wages, set work conditions, and maintain employment records are conclusory and inadequate to establish that [defendant] was an employer, as several courts in this circuit have held."). Based on these allegations alone, the Court cannot reasonably infer that Namhi is an "employer" under the FLSA or the NYLL. *See Shi Ming Chen v. Hunan Manor Enterprise, Inc.*, No. 17-cv-802 (GBD), 2018 WL 1166626, at *8 (S.D.N.Y. Feb. 15, 2018); *Chen*, 2017 WL 2600051, at *4 ("Plaintiff's boilerplate recitation of the four *Carter* factors is not entitled to the assumption of truth, and therefore cannot give rise to a plausible inference that [the defendant] is an 'employer.'").

    Cho makes additional factual allegations concerning her relationship with Namhi. Cho alleges that after she informed Namhi she had learning and speech disabilities, Namhi frequently yelled at her and made light of her disabilities by calling her names, despite her requests that Namhi stop. ¶ 66. Additionally, Cho claims that Namhi told her that because Cho worked for the building, then she was "our slave." ¶ 85. Separately from these instances of name-calling, Cho alleges that Namhi engaged in religious harassment, such as forcing Cho to attend Bible readings, forcibly drawing a cross on her forehead, and referring to her as a "sinner." ¶¶ 72, 76–77.

    The Court finds that these factual allegations are insufficient for it to reasonably infer that Namhi was Cho's employer under the FLSA or NYLL. *Cf. Chen*, 2017 WL

14

2600051, at *4 (denying motion to dismiss where plaintiff alleged that defendant hired specific individuals who oversaw operations, made regular weekly visits to the restaurant and directed employees on how to manage the restaurant during those visits). Cho's allegations that Namhi called her names do not address whether Namhi possessed the formal or functional ability—as discussed in *Carter* and *Zheng*—to control Cho's employment or Osaka's operations. *See Carter*, 735 F.2d at 12; *Zheng*, 355 F.3d at 72.

While Cho also alleges that Namhi engaged in religious harassment, would call her a sinner, ¶¶ 76–78, and forcibly drew a cross on her forehead, ¶ 77, these actions also do not implicate the *Carter* or *Zheng* factors. *See Carter*, 735 F.2d at 12; *Zheng*, 355 F.3d at 72.

The First Amended Complaint also states that the defendants, including Namhi, "forced [Cho] to attend morning Bible readings, which took place multiple times per week," and that if she refused, the defendants "would bully her, harass her, and call her names." ¶¶ 73, 74. Based on these facts, the Court is unable to conclude that the Bible readings were part of her employment responsibilities. While this allegation may indicate that Namhi had some degree of control over Cho, as currently plead, it does not establish how this control relates to her employment at Osaka. Moreover, even if Cho sufficiently alleged that Namhi forced her to attend morning Bible readings while at work,[14] this claim only establishes that Namhi had some control of her employment conditions under *Zheng*, or alternatively, under the second factor of *Carter*. However, meeting a single factor under *Carter* or *Zheng* is not necessarily sufficient to defeat a 12(c) motion for judgment on pleadings. Instead, the Court employs a "totality of the circumstances" approach. *See Irizarry*, 722 F.3d at 104. For example, in *Yongfu Yang v. An Ju Home, Inc.*, the court granted defendants 12(c) motion on the basis that they were not employers, even when one *Carter* factor—supervision and control of employees' work schedules or

---

[14] To be clear, the First Amended Complaint does not say that the Bible readings took place at Osaka.

15

conditions of employment—weighed in favor of "formal control." No. 19-cv-5616 (JPO), 2020 WL 3510683, at *4–5 (S.D.N.Y. June 29, 2020).

Next, Cho alleges that Namhi was directly involved in Osaka's management. She alleges that Namhi was one of her "bosses", and that she had to follow Namhi's orders "no matter what" they were. ¶ 50. Cho also alleges that Osaka was operating under Namhi's acupuncture and massage licenses, ¶ 52, and that she was forced to clean rooms at Namhi's medical practice without additional compensation, ¶ 84.

The Court is also unable to conclude that Namhi was Cho's employer on the basis of these allegations. While she alleges she had to follow Namhi's orders, the First Amended Complaint never describes what orders were actually given. Without this factual content, Cho's allegations lack facial plausibility to support her claims. *See Twombly*, 550 U.S. 544. The same goes for Cho's allegations that Osaka operated under Namhi's licenses. While Osaka may have operated under Namhi's licenses, this does not indicate there was an employer-employee relationship between Namhi and Cho, especially since this allegation does not implicate the factors set forth in *Carter* or *Zheng*.

Likewise, the Court cannot infer Namhi's status as an employer at Osaka on the basis Cho was forced to clean Namhi's separate medical office. As an initial matter, the First Amended Complaint does not specify who directed Cho to clean the medical office, and only states that she "was also forced to clean [Namhi's] doctor['s] office and room without any additional compensation." ¶ 84. Moreover, even if Cho had sufficiently alleged that Namhi directed her to clean the medical office, alleging some control over the conditions of Cho's employment under *Zheng* or under the second *Carter* factor is not necessarily sufficient to defeat a 12(c) motion, as explained above. *See Yongfu* Yang, 2020 WL 3510683, at *4–5 (S.D.N.Y. June 29, 2020).

In conclusion, based on the allegations in the First Amended Complaint, Cho's allegations about Namhi fail to satisfy either the formal *Carter* test or the functional *Zheng* test. Cho has not pleaded sufficient facts to support a finding that Namhi

16

constituted her employer for the purposes of the FLSA or NYLL analyses.  Accordingly, the Court dismisses without prejudice Cho's FLSA and NYLL claims against Namhi.[15]

### 4. New York State and City Human Rights Laws Claims

In addition to her FLSA and NYLL claims, Cho alleges that Namhi violated the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law. ("NYCHRL").  Doc. 50 ¶ 122–139.  Specifically, the First Amended Complaint alleges that the defendants, including Namhi, permitted employees at Osaka to discriminate and retaliate against Cho.  *Id.*

The NYSHRL and NYCHRL make it unlawful, among other things, for an employer to discriminate against an employee on the basis of disability or to retaliate against them for engaging in a protected activity.  *See* N.Y. Exec. Law § 296 *et seq.*; N.Y. Admin. Code § 8-107 *et seq*.  The NYSHRL "provides for liability for discrimination on the part of employers only."  *Nezaj v. PS450 Bar & Restaurant*, No. 22-cv- 8494 (PAE), 2024 WL 815996, at *7 (S.D.N.Y. Feb. 27, 2024).  Individual employees can be held liable under the state statute, but "only on an aider-and-abettor theory."  *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023); *see also Bueno v. Eurostars Hotel Co.*, No. 21-cv-535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan 10, 2022) ("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct.").  In contrast, the NYCHRL extends direct liability to employees, not just employers, for "their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."  *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 459, 167 N.E.3d 454, 460 (2021); *see also Charles v.*

---

[15] While Namhi requests dismissal with prejudice, *see* Doc. 108, this type of dismissal is appropriate when "the flaws in pleadings are incurable." *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009).  As this is the Court's first opportunity to point out flaws in Cho's pleadings against Namhi, and it is not yet apparent that the flaws in the pleading are incurable, the Court finds that dismissal with prejudice is not warranted.

17

*City of New York*, No. 21-cv-5567 (JPC), 2023 WL 2752123, at *7 (S.D.N.Y. Mar. 31, 2023) (finding the same).

As discussed above, Cho has not sufficiently alleged that Namhi was an employer. Her liability under both the NYSHRL and the NYCHRL, therefore, depends on whether she was an employee at Osaka. However, the First Amended Complaint only alleges that Namhi "was an employee within the meaning of the NYSHRL" without providing any additional details. ¶ 12. Cho's allegation is not supported by facts that would provide a basis to find Namhi was an employee. The Court finds the allegation that Namhi was an Osaka employee is conclusory. *See Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 544) (pleadings must allege facts that are plausible and not merely conclusory statements).

Because the First Amended Complaint does not sufficiently allege that Namhi was an employer or employee at Osaka, the Court dismisses without prejudice Cho's NYSHRL and NYCHRL claims against her.

### B. Motion for Discovery Sanctions to Bar Testimony and Affidavits

Cho moves to bar Paula and Namhi from providing testimony at trial and from providing affidavits because of their failure to appear for depositions. Doc. 110 at 9–10. While Paula did not submit a response, Namhi opposes this motion on the grounds that, in light of her cancer diagnosis, Cho failed to grant her reasonable medical accommodations to complete her deposition over Zoom. Doc. 117 at 25–27.

Rule 37(d) provides that a court has the power to order sanctions when "a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). Furthermore, Rule 37(d) "generally require[s] the violation of a court order before sanctions may be imposed." *Man Zhang v. City of New York*, No. 17-cv-5415 (JFK) (OTW), 2019 WL 3936767, at *9 (S.D.N.Y. Aug. 20, 2019); see also Fed. R. Civ. P. 37(b)(2)(A) (providing sanctions for "fail[ing] to obey an order to provide or permit

18

discovery."). The harshest sanctions available are "preclusion of evidence and dismissal of the action" which the Second Circuit has instructed should only be imposed in "rare situations." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). Moreover, any sanction must be "just," and "be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695(1982).

Paula was served with a notice to appear for her deposition in July 2021. Doc. 110-3. Nearly three years later her deposition has not been completed, notwithstanding court orders in the interim. *See Man Zhang*, 2019 WL 3936767, at *9. Despite the Court's January 13, 2023 order to arrange for Paula to be deposed remotely, Doc. 77, her deposition still has not been completed. And while counsel for Paula represented that she suffered physical injuries and cognitive impairments following her fall in October 2023, Doc. 96, counsel has failed to submit any corroborating documentation, as requested by the Court. Doc. 106.[16]

Accordingly, the Court finds that this is the "rare" case where more serious sanctions are warranted. *Update Art*, 843 F.2d at 71. The Court also finds that Cho's proposed sanction of barring Paula's testimony at trial and preventing her from submitting affidavits is just, and is specifically related to the particular claim at issue in discovery—namely, Cho's inability to depose Paula. *See Insurance Corp. of Ireland*, 456 U.S. at 707. Thus, the Court grants Cho's motion to sanction Paula by barring her from providing testimony at trial or from submitting affidavits in this case.

As to Namhi, the Court notes that Rule 37 sanctions are available when a party fails to appear for his or her deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). All claims against

---

[16] Finally, the Court notes that the Paula did not submit any opposition to the motion. It will therefore consider the motion unopposed.

19

Namhi have been dismissed without prejudice, and as a result, she is no longer a party to this action. Accordingly, the motion for Rule 37 sanctions against her is denied as moot.

## IV.  CONCLUSION

For the foregoing reasons, Namhi's motion for judgment on the pleadings is GRANTED. Cho's claims against Namhi are dismissed without prejudice. If Cho decides to replead her claims against Namhi, any Second Amended Complaint must be filed by July 31, 2024. Cho's motion for discovery sanctions is GRANTED in part and DENIED in part. Defendant Paula is barred from providing testimony at trial or from submitting affidavits in this case.

The parties are directed to appear for a status conference on July 24, 2024 at 11:00 am at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007 in Courtroom 619. The Clerk of Court is respectfully directed to terminate the motions, Docs. 108 and 109.

It is SO ORDERED.

Dated:  July 10, 2024
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.